

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0819-12

**ROBERT RANDALL KRAUSE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS HARRIS COUNTY

**JOHNSON, J., filed a concurring opinion.**

### C O N C U R R I N G   O P I N I O N

There seems to be confusion on the meanings of "emergency medical services" (EMS) and "emergency medical technician" (EMT). The governing statute is Health and Safety Code Chapter 773, which "may be cited as the Emergency Health Care Act." *Id.* at § 773.001. Section 773.002 states, "The purpose of this chapter is to provide for the prompt and efficient transportation of sick and injured patients, after necessary stabilization, and to encourage public access to that transportation in each area of the state."

The terms at issue are defined in Section 773.003. "'Emergency medical services' means services used to respond to an individual's perceived need for immediate medical care and to prevent death or aggravation of physiological or psychological illness or injury." *Id.* at (8). I understand that to mean an entity with employees who provide medical assistance as first responders to emergencies such as fires, traffic accidents, heart attacks, strokes, and violent crime. "'Emergency medical services personnel' means: (A) emergency care attendant; (B) emergency medical technicians; (C) emergency medical technicians—intermediate; (D) emergency medical technicians—paramedic; or (E) licensed paramedic." *Id.* at (10). All of these definitions must be considered in the context of the statute: "to provide for the prompt and efficient transportation of sick and injured patients, after necessary stabilization . . .."[1] *Id.* at (10). I understand this to mean the medically trained persons who are employed by an emergency medical service to transport an ill or injured person.[2]

The enumerated types of emergency medical services personnel in Section 773.003 are based on the level of training. Sections 773.046-773.0495 set out the standards for such personnel. An emergency care attendant must be certified as "minimally proficient to provide emergency prehospital care by providing initial aid that promotes comfort and avoids aggravation of an injury or illness," otherwise known as first aid. Such a person is not required to have a high-school diploma or a GED. Section 773.046. Escalating training levels are required for the other categories,

---

[1] Of the 17 statutes other than Transp. Code § 773 in which the phrase "emergency medical services personnel" appears, ten specify that it is as defined in 773.003, and one defines the term as an individual certified by the Department of State Health Services. One expands the definition to include hospital emergency facility staff in the event of a major disaster. The remaining five use the phrase without a stated definition.

[2] "Emergency medical services personnel" is not synonymous with "EMT." EMTs are not EMTs because they are employed by emergency medical services; they are EMTs because of their training. EMTs may be employed in hospital emergency rooms and perform procedures as first responders to those who need such assistance and arrive by private transportation. They may also work for private ambulance services that transport sick persons in non-emergency situations, in doctor's offices taking vital-sign data, on location for filming movies, and at sporting events.

with paramedics being "minimally proficient to provide advanced life support that includes initiation under medical supervision of certain procedures," including intravenous therapy, intubation, defibrillation, and drug therapy and must also have completed "a curriculum that includes college-level course work . . .." Section 773.0495.

The person who drew appellant's blood, Ms. Lopez, was classified by her employer, the hospital, as an EMT–I. Such a person is certified "as minimally proficient to provide emergency prehospital care by initiating under medical supervision certain procedures, including intravenous therapy and endotracheal or esophageal intubation." Section 773.048. Presumably, if she is "minimally proficient" at inserting an IV needle into a vein, she is also "minimally proficient" at inserting a needle into a vein to withdraw a sample of blood.[3] A change of job title by her employer did not affect her standing as an EMT-I.

It is clear from the language of the statute that the legislature intended to regulate those who transport patients from the scene of the injury to a hospital. Ms. Lopez was in no way involved in the transportation of injured or ill patients and so, by the clear language of the statute, is not "emergency medical services personnel" for the purposes of Transportation Code § 724.017. She was employed by the hospital to draw samples of blood, was qualified to do so, and had an office in the hospital for that purpose. And her office in the hospital was a sanitary place. An ambulance is likely to become an unsanitary place, contaminated with any number of substances such as soot from a fire, exsanguinated blood from the patient or other persons, and dirt, vegetation, and glass fragments from a traffic accident. Under such conditions, the taking of a blood draw by a member

---

[3] Phlebotomists, who spend all day every day drawing blood samples for medical tests, are not regulated by the state.

of the ambulance crew is not appropriate. The goal of transportation is to get the patient to the hospital alive. Drawing blood for a test for blood-alcohol concentration is probably not high on the to-do list, nor should it be.

I think that Ms. Lopez is just the sort of "qualified technician" that the legislature had in mind when it established rules for who should be performing blood draws pursuant to Texas Transportation Code § 724.017.

With these comments, I join the opinion of the Court.

Filed: May 8, 2013
Publish